(Reap. Dec. 9060)

S. S. KRESGE COMPANY v. UNITED STATES

Entry Nos. 790854; 787161.

(Decided January 24, 1958)

*Sharretts, Paley & Carter (Howard Clare Carter* of counsel) for the plaintiff.

*George Cochran Doub,* Assistant Attorney General (*Samuel D. Spector,* trial attorney), for the defendant.

MOLLISON, Judge: These are appeals for reappraisement of the values of certain so-called horns of plenty and toy wash baskets, both made of rattan, exported from Hong Kong on or about October 8 and 9, 1953. The horns of plenty were invoiced at United States $2.40 per dozen and the toy wash baskets at United States $0.58 per dozen, and the invoices contain a statement that the following charges were included in those prices:

> Packing, crates, etc.
> Boat & Coolie hire
> Stamp on B/Lading & Draft
> Postage on s/documents
> Consular Fee
> Certificate of Origin
> Buying & Shipping comm. at 10%

The merchandise was entered at the invoice unit values, less the charges for all of the foregoing, except "Packing, crates, etc." and "Boat & Coolie hire," and was appraised as entered, apparently on the basis of export value, which is defined in section 402 (d) of the Tariff Act of 1930. The only item of the appraisements challenged by the appeals at bar is the inclusion of the charge for boat and coolie hire in the value of the merchandise.

This is a proper form of procedure (*United States* v. *Fritzsche Bros., Inc.,* 35 C. C. P. A. (Customs) 60, C. A. D. 371, and *United States* v. *Freedman & Slater, Inc.,* 25 C. C. P. A. (Customs) 112, T. D. 49241) and limits the issue to the correctness of the inclusion of the challenged item in the value of the merchandise.

The proof offered by the plaintiff in support of its contention that the charge for boat and coolie hire is not properly a part of the export value of the merchandise in question is in the form of two affidavits.

The first affidavit is of Fung Lai Wah, who identifies himself therein as the director of Li & Fung, Ltd., of Hong Kong, with which he was associated for 25 years. The affiant states that Li & Fung, Ltd., acts as buying agent for the importer and plaintiff herein and that he purchased the merchandise covered by the shipments here involved on behalf of the plaintiff. Upon the foregoing background, the affiant states:

* * * I am thoroughly familiar with the prices at which the manufacturers of such rattanware were offering their merchandise for sale at or about the date of exportation of these shipments. The prices that I paid for this merchandise

were freely available to anyone who wished to purchase it for exportation to the United States or to other countries. There is no market in Hong Kong for domestic consumption of this merchandise because such merchandise is never used in Hong Kong.

This merchandise is freely offered for sale and sold on an ex-factory basis, that is, delivery is made to the purchaser at the factory. Charges arising after the merchandise leaves the factory are paid for by the purchaser. In these cases I added my buying commission and the boat and coolie charges to the cost of the merchandise and prepared my invoices to S. S. Kresge Co. on this basis. The price that I paid to the manufacturers of this merchandise is in fact the prices shown on my invoices less my buying commission and less boat and coolie hire in the amounts as shown on these invoices.

Beneath the affiant's signature and opposite the jurat signed by the American vice consul, the following words appear: "For the contents of this document no responsibility is assumed."

At the time the affidavit was offered in evidence, counsel for the defendant objected to its receipt, on the ground that the foregoing words destroyed the effect of the statements made under oath. In so doing, counsel for the defendant imputed the words to the affiant.

Counsel for the plaintiff pointed out that the same words appear in a certificate, signed by the same American vice consul, annexed to the second affidavit offered in evidence, and that the words were placed there by the vice consul to characterize his own action and not that of the affiant.

Reference to 22 CFR, sections 136.10 and 136.38, being regulations issued by the Department of State and applicable to consular officers, and relating to the inclusion in notarial certificates and in certificates of authentication of waivers of responsibility of consular officers with respect to the statements made in documents either notarized or authenticated by the consular officers, shows that the disputed statement was obviously that of the vice consul disclaiming any responsibility on his part for the statements made by the affiant. As such, of course, it does not affect in any way the admissibility or the evidentiary value of the affiant's statements.

The foregoing and other objections made by counsel for the defendant to the admissibility of the affidavit at the time of its offer were overruled, and it was admitted in evidence as plaintiff's exhibit 1.

The second affidavit offered by the plaintiff is that of ChanYok Ching, who identifies himself therein as the proprietor of Shum Lee of Hong Kong, the manufacturer of the rattanware here in question. Mr. Chan then states:

\* \* \* I have been engaged in the manufacture and sale of rattanware for 8 years and by reason of my experience I am thoroughly familiar with the prices at which such merchandise is freely offered for sale and all of the terms and conditions of the sales of such merchandise.

In September and October 1953 I sold the rattanware covered by consular invoice numbers 1370 of October 2, 1953 and 1465 of October 9, 1953 to Li &

Fung Ltd., buying agents for S. S. Kresge Company, at the prices shown on the respective consular invoices. For the convenience of S. S. Kresge Co. and its agent the prices shown on these invoices included the buying commission as well as boat and coolie hire. This merchandise was delivered to Li & Fung Ltd. at our factory.

At the time I accepted these orders I was freely offering this merchandise for sale and selling it for delivery to the purchaser at the factory at the same prices, less the buying commission and boat and coolie hire. Anyone who wished to purchase this merchandise and take possession of it at the factory could purchase it on this basis. All of my sales and offers of sale have been at the same prices whether the merchandise was destined for exportation to the United States or to other countries. This merchandise is not offered or sold for home consumption because there is no demand for it in Hong Kong.

The jurat of the foregoing affidavit shows that it was sworn to before a notary public in Hong Kong, and attached to the affidavit is a certificate of the American vice consul authenticating the genuineness of the official position of the notary, as well as his seal and signature. Incidentally, it is noted that the certificate of authentication contains the statement "For the contents of the annexed document no responsibility is assumed" over the signature of the vice consul, and the court observes that it is not aware of any situation in which one performing notarial acts or authenticating the genuineness of the official character of other officials assumes responsibility for the contents of a document the subject of such acts.

To the admissibility of this affidavit numerous objections were made by counsel for the defendant, all of which were overruled, and the affidavit was received in evidence as plaintiff's exhibit 2.

In the brief filed on behalf of the defendant, it is urged that plaintiff's exhibits 1 and 2 have no probative value for the following reasons:

* * * They contain conclusive statements, without any facts in support thereof. All of the averments contained therein are the type of statements which the Court of Customs and Patent Appeals frowned upon in the case of *Brooks Paper Company* v. *United States*, 40 C. C. P. A. (Customs) 38, C. A. D. 495, wherein the Court held that ultimate facts have no weight without any evidentiary facts. There were no copies of offers for sale, invoices, or other evidentiary facts in Exhibits 1 and 2 to support the ultimate facts stated therein that the merchandise was freely offered for sale on an ex factory basis, or that there was no higher value therefor. The pronouncement by the Court in the *Brooks Paper Co.* case, *supra*, was reaffirmed and repeated in the subsequent case of *Kobe Import Co.* v. *United States*, 42 C. C. P. A. (Customs) 194, C. A. D. 593, wherein the Court stated that affidavits containing mere declarations of essential facts without proper support therefor from evidentiary facts, contribute nothing substantial toward a favorable conclusion of the values claimed by the importer.

In the *Brooks Paper Company* and *Kobe Import Co.* cases cited, our appellate court referred to the distinction made between conclusions or statements of ultimate fact and statements of evidentiary facts, and held that statements or declarations offered in evidence of the ultimate facts in issue, unsupported by evidentiary facts, do not constitute substantial evidence upon which this court may make a

finding with respect to any of the material issues in a reappraisement case.

By reason of the fact that the sole item of the appraisements challenged by the plaintiff herein was the correctness of the inclusion of the charge for "Boat & Coolie hire" in the appraised values, the only material issue which the plaintiff herein was required to meet was whether or not the said charges were part of the prices at which such merchandise was freely offered for sale in the foreign market. In the discharge of that burden, the plaintiff offered the statements, in affidavit form, of persons who, by reason of their background and personal experience, were in a position to know the facts with respect to when and how the charge arose.

From a reading of the portion quoted above from defendant's brief, it appears to be the view of its counsel that the *Brooks Paper Company* and *Kobe Import Co.* decisions, *supra*, require that statements of fact given in affidavits must be supported by other documentary evidence, such as "copies of offers for sale, invoices, or other evidentiary facts." The court knows no rule of law, and certainly finds none expressed or implied in the cited cases, to the effect that evidentiary facts must be documentary in form. Evidentiary facts may be presented in the form of the oral or written statements of witnesses or affiants.

Moreover, in a later case, *Kobe Import Co. v. United States*, 43 C. C. P. A. (Customs) 136, C. A. D. 620, a majority of our appellate court pointed out that it is frequently impossible to draw a sharp distinction between conclusions, or statements of ultimate facts, and statements of evidentiary facts.

As has been said, the affiants in exhibits 1 and 2 were persons who were in a position to know the facts with respect to when and how the charge in question arose. They were men familiar with the market in Hong Kong for the purchase and sale of merchandise such as that here involved. Each clearly stated that such merchandise was offered for sale and sold to anyone who wished to purchase it and take possession of it at the factory, without charge for boat and coolie hire, and that the merchandise in issue was so purchased.

If the only reasoned conclusion that can be drawn from those evidentiary facts is the ultimate fact that the offered price did not include a charge for boat and coolie hire, that is merely an example of a common occurrence in the operations of the laws of evidence in the proof of facts, that a simple statement of evidentiary fact permits only one conclusion to be drawn therefrom.

Counsel for the defendant urges that—

* * * the best evidence is the written contract, into which all oral or other provisions are merged. Any attempt to read any different terms into these contracts is objectionable and should not be permitted as it tends to vary the terms of a written instrument.

In making this statement, counsel was obviously referring to defendant's exhibits B and C, copies of import orders, issued by the American importer, plaintiff herein, to its purchasing agent, Li & Fung, Ltd., of Hong Kong. It is noted that reference is made in the foregoing statement to the "best evidence," which are words which, as said in Jones' The Law of Evidence in Civil Cases, 4th edition, volume 1, page 385, section 199, "have thus gained a legal signification as distinguished from their popular meaning," and, in that sense, relate to primary as distinguished from secondary evidence. From the context, however, it appears that counsel's statement actually does not have reference to the "Best Evidence" rule, but to the somewhat different "Parol Evidence" rule, which requires—

* * * in the absence of a showing of fraud, mistake or accident, the exclusion of parol or extrinsic evidence by which a party seeks to contradict, vary, add to or subtract from the terms of a valid written agreement or instrument. (Jones, op. cit., vol. 2, p. 820, § 434.)

Neither the "Best Evidence" nor the "Parol Evidence" rule has any application to the evidentiary situation at bar. The written instruments, represented by exhibits B and C, are not contracts (as they are denominated by counsel for the defendant) between the seller and buyer, but are orders from the principal to its agent. They do not purport to show the price at which the merchandise was offered or sold by the *seller* to the agent of the *buyer*, but show the total price the buyer principal expected to pay its agent (*not* the manufacturer) for getting the merchandise free on board of the exporting vessel, including the cost of the mrchandise, the expenses of packing and transportation to the exporting vessel, and the agent's own commission for his services in these matters.

Thus, the statements of the manufacturer and the buying agent in the affidavits, exhibits 1 and 2, do not in any way tend to contradict, vary, add to, or substract from the terms of the import orders, exhibits B and C. The contents of the two sets of documents relate to two different phases of the transactions. Exhibits B and C relate to what might be termed the intramural situation between the seller and its buying agent, while exhibits 1 and 2 relate to the situation which obtained in the market place between the seller and the buying agent. Indeed, an indication that the appraiser did not consider the total price shown in exhibits B and C to represent the selling price of the goods is apparent from the fact that he allowed as a proper deduction on entry the buying commission included in the prices shown on exhibits B and C.

Counsel for the defendant has drawn attention to a statement in exhibit 2, the affidavit of the manufacturer, which is said to be "rather difficult to comprehend or give credence." As given by counsel for the defendant, the statement (which is italicized in the excerpt below)

is quoted out of context, but the entire paragraph in which it occurs reads as follows:

In September and October 1953 I sold the rattanware covered by consular invoice numbers 1370 of October 2, 1953 and 1465 of October 9, 1953 to Li & Fung Ltd., buying agents for S. S. Kresge Company, at the prices shown on the respective consular invoices. *For the convenience of S. S. Kresge Co. and its agent the prices shown on these invoices included the buying commission as well as boat and coolie hire.* This merchandise was delivered to Li & Fung Ltd. at our factory. [Italics added.]

The invoices referred to, which relate to the instant shipments, were received in evidence as defendant's collective exhibit A and show that they were made out and signed by the buying agent, and not by the manufacturer. The sentence first above quoted is comprehensible and compatible with the rest of the statements made by the affiant if the word "prices," as used therein, is understood to mean the net prices shown on the invoices, that is to say, the dollar prices shown, less the charges noted on the invoices, which, presumably, was the meaning intended by the affiant. The second, italicized sentence, refers to the action of the buying agent, who made out and signed the invoices, and is in conformity with the affidavit of the buying agent.

To sum up, the evidence shows a course of dealing whereby an American importer ordered a buying agent to purchase merchandise in its behalf, the importer to reimburse the buying agent for all expenditures in connection therewith, including the cost of the merchandise, packing, and placing the same at the exporting vessel, plus a commission for such services. It shows that, in the ordinary course of trade, the merchandise was purchased at ex-factory prices, on which basis such merchandise was freely offered for sale, and that costs from that point were paid for by the buying agent on behalf of the importer. The evidence, therefore, shows that the offer of the merchandise was not on an f. o. b. basis, but on an ex-factory basis. Consequently, the decision in the case of *United States* v. *Paul A. Straub & Co., Inc.*, 41 C. C. P. A. (Customs) 209, C. A. D. 553, cited by counsel for the defendant, has no application.

On the entire record before me, I find as facts:

(1) That the merchandise involved consists of rattanware horns of plenty and toy wash baskets, exported from Hong Kong on or about October 8 and 9, 1953.

(2) That, at such times, Hong Kong was the principal market in the country of exportation for the offer and sale of such merchandise.

(3) That, at or about such time, such or similar merchandise was not freely offered for sale for home consumption in the country of exportation.

(4) That, at or about such times, the prices at which such merchandise was freely offered for sale to all purchasers in Hong Kong, in the

usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, were the appraised values, less the amounts shown on each invoice for boat and coolie hire.

I conclude as matters of law:

(1) That export value, as defined in section 402 (d) of the Tariff Act of 1930, is the proper basis of value for the said merchandise, and

(2) That such export values are as set forth in finding of fact No. 4, above.

Judgment will issue accordingly.